Cecchini instructed a C.V.R. employee to obtain the prepayment checks from Tyrell, rather than allowing Tyrell to deliver them to plaintiff as usual. Further, there is no question that the prepayment checks were endorsed and deposited into the C.V.R. partnership account. Thus, Cecchini clearly intended to convert the plaintiff's funds to C.V.R., and he succeeded. Nor is there any doubt that Cecchini was a party to and intended to be bound by the original stipulation concerning the debt at issue here. Consequently, as to Cecchini, the debt cannot be discharged.

 Second, although there is no evidence in the record concerning Robustelli's direct involvement in converting the funds, it is undisputed that Robustelli and Cecchini were partners in C.V.R. It is also undisputed that Cecchini was acting on behalf of the partnership and in the ordinary course of the business of the partnership when he converted the funds. Robustelli, at a minimum, participated in the benefits of the conversion, as evidenced by his entering into the stipulated judgment in favor of plaintiff. Therefore, applying basic partnership law, Cecchini's knowledge and intent are imputed to Robustelli. *See Federal Deposit Ins. Corp. v. Braemoor Associates,* 686 F.2d 550 (7th Cir.1982), *cert. denied,* 461 U.S. 927 (1983) (applying sections 12 and 13 of the Uniform Partnership Act); *see also McIntyre v. Kavanaugh,* 242 U.S. at 139, 37 S.Ct. at 39; *In re Kasler,* 611 F.2d 308, 309–310 n. 3 (9th Cir.1979); 3 *Collier on Bankruptcy,* ¶ 523.08 at 523–52 and nn. 22–23 (15th ed. 1983); 60 Am. Jur.2d *Partnership* § 167 (1964). We find that, as to Robustelli as well, the debt cannot be discharged.

## CONCLUSION

For the foregoing reasons, the decision of the BAP is REVERSED.

---

* The panel unanimously finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 3(f) and Fed.R.App.P. 34(a).

**Thomas R. RUTHERFORD, Plaintiff-Appellant,**

v.

**CITY OF BERKELEY, et al., Defendant-Appellee.**

No. 83–1853.

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 13, 1985 *.

Decided Jan. 21, 1986.

Ronald Steven Mintz, Pomona, Cal., for plaintiff-appellant.

Randolph Hall, Berkeley, Cal., for defendant-appellee.

Before ANDERSON, SKOPIL and POOLE, Circuit Judges.

POOLE, Circuit Judge:

Thomas R. Rutherford appeals from the district court's grant of a directed verdict in favor of defendants on his claim under 42 U.S.C. § 1983 (1982) and related pendent state claims for lack of sufficient evidence. We reverse the judgment and remand for further proceedings.

On March 14, 1980, Rutherford and his common-law wife, Diana Rutherford, were visiting a friend, Lee Pfleiderer, in Pfleiderer's room in a Berkeley residence hotel. As a result of complaints from other hotel guests that Rutherford, his wife, and Pfleiderer were in the room drinking and fighting, the hotel manager went to Pfleid-erer's room and asked Rutherford and his wife to leave the hotel immediately. Rutherford alleges that several minutes after he and his wife left the room, Pfleiderer emerged from the room, bleeding from the head. Rutherford called the Berkeley police to report that Pfleiderer had been assaulted by the hotel manager. Rutherford and his wife then left the hotel and crossed the street to wait for the police to arrive.

Several Berkeley police officers arrived at the Berkeley residence hotel. Two entered the Berkeley residence hotel and approximately five or six other Berkeley police officers, including defendants Tom Hood, Edward McBride and John Houpt, detained Rutherford. Rutherford alleges that, without any provocation and without placing him under arrest, the officers detaining him threw him to the ground, punched, kicked, and handcuffed him. Defendants Officers Hood, McBride, and Houpt deny that they assaulted Rutherford, but admit handcuffing him and claim that they placed him under arrest at that time for assault with a deadly weapon. Rutherford was taken to the Berkeley police station and, after a week in custody, the charge against him was dropped and he was released.

Rutherford brought suit under 42 U.S.C. § 1983 (1982) alleging that defendants deprived him of his constitutional rights under the Fourteenth Amendment. He claims that he was assaulted and battered by defendants Officers Hood, McBride, and Houpt in violation of his civil rights.

At trial, Rutherford initially identified defendants Officers Hood, McBride, and Houpt as the officers who assaulted him, but later stated that he was not certain whether any of them actually kicked or punched him. Rutherford did testify, however, that while he was on the ground being beaten he saw the faces of the named officers.

At the close of the Rutherford's case, the district court directed a verdict in favor of defendants, stating that no reasonable jurors could possibly find for the plaintiff because he had "offered no proof that any

of the particular individuals he named as defendants did do any beating of him." Rutherford appeals.

## I

We must first address whether Rutherford has alleged a claim upon which relief may be granted under § 1983. Rutherford has properly stated a claim under § 1983 if he alleges facts establishing a deprivation of rights secured by the Constitution or laws of the United States. *Havas v. Thornton*, 609 F.2d 372, 374 (9th Cir.1979).

We believe that Rutherford has alleged facts establishing a violation of substantive due process, thereby stating a § 1983 claim. The Supreme Court outlined the nature of a substantive due process claim in the police brutality context in *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). In *Rochin*, the Court reversed a conviction based on evidence obtained by subjecting the petitioner to a stomach pump in violation of his substantive due process rights. *Id.* at 174, 72 S.Ct. at 210. The *Rochin* Court reasoned that substantive due process is violated when the government engages in actions that "offend those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses." 342 U.S. at 169, 72 S.Ct. at 208. The Court did not articulate specific standards for identifying what constitutes a substantive due process violation but concluded that it lies where government conduct "shocks the conscience" or constitutes force that is "brutal" and offends "even hardened sensibilities." *Id.* at 172–73, 72 S.Ct. at 209–10. Following *Rochin*, the seminal case of *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973), developed more definite standards for identifying substantive due process violations. Noting that violations that give rise to a substantive due process claim are necessarily more egregious than those that give rise to simple tort actions, Judge Friendly wrote that

in determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm. *Id.* at 1033.

This court adopted the *Johnson v. Glick* analysis in *Meredith v. State of Arizona*, 523 F.2d 481, 484 (9th Cir.1975), holding that an unprovoked assault and battery by a guard upon a state prisoner was a violation of the prisoner's constitutional right to due process. In *Meredith*, we stated that, under *Johnson v. Glick*, conduct under color of state law that can be fairly characterized as "intentional, unjustified, brutal, and offensive to human dignity" violates the victim's right to substantive due process. *Id.*

 The complaint in this case alleges an unprovoked assault and battery on an individual by the police officers placing him in custody, by throwing the individual on the ground and repeatedly punching and kicking him. Such conduct would satisfy the *Meredith* criteria. *Accord Gregory v. Thompson*, 500 F.2d 59, 61 (9th Cir.1974) (deprivation of liberty found where justice of the peace forced plaintiff out of his courtroom and then threw him to the floor, jumped on him and began to beat him). Therefore, Rutherford has stated facts here which, if true, would support a claim of deprivation of substantive due process under § 1983.

The existence of a basis for liability under state tort law does not affect our conclusion. The availability of a state tort action has been held to preclude a § 1983 suit in certain situations because it provides adequate procedural due process and, therefore, no constitutional right had been violated. For example, in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), a prisoner brought a § 1983 action against state prison adminis-

trators for the negligent deprivation of mail-order hobby materials valued at $23.50. The Supreme Court held that a cause of action did not lie under § 1983 for the negligent, random and unauthorized deprivation of property by state officials because the state had provided the plaintiff a meaningful postdeprivation remedy in the state courts. *Id.* at 540–44, 101 S.Ct. at 1915–17. Similarly, this court in *Rutledge v. Arizona Bd. of Regents,* 660 F.2d 1345, 1352 (9th Cir.1981), *aff'd on other grounds sub nom. Kush v. Rutledge,* 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983), held that the plaintiff did not state a claim under § 1983 for assault and battery because the postdeprivation hearing available to the appellant under the state tort laws satisfied the due process requirement of the Fourteenth Amendment. The court, however, declined to question the adequacy of the postdeprivation procedures under state law because the appellant had not raised that issue and because the appellant already had sought redress in the state courts. *Id.*

█ *Parratt* and *Rutledge* involved § 1983 claims based only upon violations of procedural due process, not "whether the constitutional line ha[d] been crossed" so as to constitute a deprivation of substantive due process, nor whether the availability of state court relief precluded a § 1983 claim in such circumstances. Where the denial is of substantive, not merely procedural, due process, the governmental conduct involved would remain unjustified even if there existed the most stringent of procedural safeguards. Because the substantive due process is violated at the moment the harm occurs, the existence of a postdeprivation state remedy should not have any bearing on whether a cause of action exists under § 1983. With this in mind, we concur in the rationale set forth by the Eleventh Circuit in *Gilmere v. City of Atlanta, Ga.,* 774 F.2d 1495, 1498 (11th Cir.1985), that the existence of postdeprivation state remedies does not bar a substantive due process claim under § 1983.

The Eleventh Circuit relied on the legislative history behind § 1983 and Supreme Court pronouncements in cases other than *Parratt* to support its ruling. Congress indicated that both the egregious nature of the harms reported under § 1983 and the inefficacy of state court remedies made the situation serious enough "to warrant direct supervision by the federal courts regardless of the existence of comparable remedies under state law." *Id.* at 1498 (citing *Patsy v. Board of Regent,* 457 U.S. 496, 502–08, 102 S.Ct. 2557, 2560–64, 73 L.Ed.2d 172 (1982)). *Accord Wilson v. Garcia,* —— U.S. ——, 105 S.Ct. 1938, 1949, 85 L.Ed.2d 254 (1985). The Eleventh Circuit reasoned that the enactment of § 1983 indicated that Congress "continues to adhere to the belief that police abuse is a sufficient threat to constitutional rights to warrant 'a federal right in federal courts.'" 774 F.2d at 1499 (quoting *Monroe v. Pape,* 365 U.S. 167, 180, 81 S.Ct. 473, 480, 5 L.Ed.2d 492 (1961)).

The Supreme Court in *Monroe v. Pape,* and more recently in *Wilson v. Garcia,* stated that Congress intended that a § 1983 claim be "independently enforceable whether or not it duplicates a parallel state remedy." *Wilson,* 105 S.Ct. at 1949 (citing *Monroe,* 365 U.S. at 173, 81 S.Ct. at 476). Both *Monroe* and *Wilson,* in fact, involved claims of police brutality. The Court has made clear that the right to bring an action under § 1983 in such cases does not depend upon the exhaustion of state judicial or administrative procedures. *See, e.g., Patsy,* 457 U.S. at 503, 102 S.Ct. at 2561, *Steffel v. Thompson,* 415 U.S. 452, 472–73, 94 S.Ct. 1209, 1222–23, 39 L.Ed.2d 505 (1974); *Gibson v. Berryhill,* 411 U.S. 564, 574, 93 S.Ct. 1689, 1695, 36 L.Ed.2d 488 (1973). Furthermore, Justice Blackmun noted in his concurrence in *Parratt* that "there are certain governmental actions that, even if undertaken with a full panoply of procedural protection, are, in and of themselves, antithetical to fundamental notions of due process." 451 U.S. at 545, 101 S.Ct. at 1918 (citations omitted).

In a recent decision, this court explicitly declined to specify when the availability of some remedial relief in state court would act as a bar to federal relief under § 1983. *Haygood v. Younger,* 769 F.2d 1350, 1357 (9th Cir.1985) (en banc) (violation of procedural due process found where prison offi-

cer used incorrect method to compute former prisoner's release date). The language in that decision suggests doubt whether the court thought *Parratt* was applicable to "official assaults, batteries or other invasions of personal liberty." *Id.* Other circuit courts, however, have adopted Justice Blackmun's view that substantive due process claims survive despite the availability of a state remedy. *See, e.g., Gilmere*, 774 F.2d at 1500; *Daniels v. Williams*, 720 F.2d 792, 796 n. 3 (4th Cir.1983), *cert. granted,* — U.S. ——, 105 S.Ct. 1168, 84 L.Ed.2d 320 (1985); *State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1147 n. 5 (7th Cir.), *cert. denied,* 464 U.S. 995, 104 S.Ct. 491, 78 L.Ed.2d 686 (1983); *Duncan v. Poythress*, 657 F.2d 691, 704–05 (5th Cir. Unit B 1981), *cert. dism'd,* 459 U.S. 1012, 103 S.Ct. 368, 74 L.Ed.2d 504 (1983).

■ Partially answering the question left open in *Haygood,* we conclude that when the challenged government action is of such an egregious nature as to constitute a deprivation of fundamental due process rights within the meaning of *Rochin* and *Meredith,* the availability of state court relief does not bar federal relief under § 1983. The police officers' alleged conduct in this case, if proved, would be of that nature. We hold therefore that Rutherford has stated a claim under § 1983.

## II

■ Our second inquiry is whether the district court properly granted defendant's motion for a directed verdict on the ground of insufficient evidence. Whether a verdict should be directed is a question of law and, therefore, we review de novo the district court's decision. *Wolf v. Reynold Electrical Engineering Co.*, 304 F.2d 646, 648–49 (9th Cir.1962). When considering a motion for a directed verdict, a district court must view the evidence most favorably to the party against whom the motion is made and, without weighing the credibility of witnesses, decide whether that evidence cannot reasonably support a jury verdict in that party's favor. *Neely v. St. Paul Fire and Marine Ins. Co.*, 584 F.2d 341, 345 (9th Cir.1978). The court must also give the party against whom the motion is made

the benefit of all reasonable inferences from the evidence. *McCollum v. Smith,* 339 F.2d 348, 349 (9th Cir.1964). If conflicting inferences may be drawn from the facts, the case must go to the jury. *See Neely,* 584 F.2d at 345.

While Rutherford could not specifically state whether defendants Officers Houpt, McBride or Hood punched or kicked him, he did testify that they were among the five or six officers who were surrounding him while he was being beaten and that he saw each of their faces while he was being beaten. These three officers agreed that they were among the five or six officers who detained, arrested and handcuffed Rutherford, but denied punching or kicking Rutherford. From this evidence, a jury could reasonably infer that the named officers were participants in punching or kicking Rutherford. By declining to give Rutherford the benefit of this inference, the district court improperly took this case from the jury. We express no opinion whether a jury would have made that inference; that decision is one for the trier of fact. Accordingly, we reverse and remand for a trial consistent with this opinion.