**Betty JONES, Plaintiff–Appellant,**

v.

**Willie WILLIAMS; City of Los Angeles; Michael Akana; Grady Dublin; Richard Ludwig; Chester McMillion; Edward Ortiz; Wilson Wong; Alfonso Reyes; Richard A. Brown; Richard Ginelli; Gary Clarke; Robert Holcomb; David Nila; Richard Selleh; Mark Kroecker; Michael Hillman; Michael Downing, individually and in their official capacities, Defendants–Appellees,**

and

Daryl Gates; Arthur Daedelow;
Martina Villalobos,
Defendants.

No. 00–56929.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 5, 2002.

Filed July 24, 2002.

Stephen Yagman, Yagman & Yagman & Reichmann, Venice, CA, for the plaintiff-appellant.

Janet G. Bogigian, City Attorney's Office, Los Angeles, CA, for the defendants-appellees.

Before O'SCANNLAIN and SILVERMAN, Circuit Judges, and REED, Jr.,* District Judge.

### ORDER DENYING PETITIONS FOR REHEARING AND REHEARING EN BANC AND OPINION

#### ORDER

This court's previous opinion, filed on April 18, 2002, and published at 286 F.3d 1159 (9th Cir.2002), is withdrawn and the attached opinion is filed in its place. With the filing of this opinion, the panel has voted unanimously to deny the petition for rehearing.

Judges O'Scannlain and Silverman have voted to deny the petition for rehearing en banc, and Judge Reed so recommends. The petition for rehearing en banc was circulated to the full court, and no judge requested a vote on the petition. Fed. R.App. P. 35.

* The Honorable Edward C. Reed, Jr., Senior United States District Judge for the District of Nevada, sitting by designation.

With the filing of this opinion, the petition for rehearing and the petition for rehearing en banc are DENIED.

## OPINION

EDWARD C. REED, Jr., District Judge:

This case presents a difficult question: can officers be held liable for an allegedly unlawful search when there is no direct evidence of their individual participation? We conclude that in this case they cannot. This case also presents a difficult situation: a search of a house, pursuant to a warrant, that results in the destruction of personal property. Our reaction to the situation is great sympathy for Betty Jones.

On April 1, 1995, officers from the Los Angeles Police Department (hereinafter "LAPD") arrived at Betty Jones's (hereinafter "Jones") house in Los Angeles. The officers were part of "Operation Sunrise," the name given to a massive group of searches in homes to locate weapons and contraband related to various gangs. Jones's house was selected for search because of allegations that certain residents of her house had an affiliation with the 8 Trey Gangster Crips, one of the gangs targeted in Operation Sunrise. These searches were all conducted with warrants. The police were given the criminal history of the people residing in the houses where the raids were to be conducted, and the locations were graded on various risk factors. The police testified that they took different actions based on their understanding of the risk posed at each location.

On the morning of the search of Jones's house the officers announced their presence through a bullhorn and with two telephone calls. When the residents did not respond, the officers attempted to break down the door with a sledgehammer. Their first try was unsuccessful, and before they could try again, Jones's son, LeRoy Bowling ("Bowling"), opened the door. The officers entered the house and removed Bowling, William Arnold, and Ronald Dominguez to secure the house. After the house was secured, but before the search was completed, the men were brought back into the house where they sat on the couch and watched the officers continue to search the house. From their vantage point they watched the officers search the living room, and the dining room. The men could see into a hallway, but they could not tell what happened in the bedrooms.

When the officers completed their search the house was a mess. The officers did not clean the house before they left. Jones returned from work to find her house in shambles. She filed a complaint with the LAPD about the search, and then filed a lawsuit under 42 U.S.C. § 1983 claiming that the officers had violated her Fourth and Fourteenth Amendment rights by conducting an unreasonable search of her house.

At trial the officers testified to the actions they took in the house. The officers admitted that they moved furniture, opened doors and drawers, moved pictures, broke a lock on a closet door, moved clothes and auto parts around, moved knickknacks, photographs, and books, and broke drawers off a dresser. After an eight-day trial, the jury found that none of the officers had searched the house in an unreasonable manner.

Jones appeals the verdict,[1] claiming that the district court's failure to give her pro-

---

1. In addition, Jones claims that misconduct on the part of the defense attorney, Paul Paquette ("Paquette"), was so pervasive that it deprived her of a fair trial. This part of the case and the claim of a preserved *Monell* issue are disposed of in an unpublished mem-

posed instructions on group liability deprived her of the inference that, despite the fact no officer took responsibility for the destruction of the living room and causing a urine smell in her iron, all officers could be held liable for these actions if they were part of the searching team. Jones argues that she was permitted by law to have her instructions given to the jury.

## ANALYSIS

■ We review the district court's formulation of the jury instructions for abuse of discretion. *Monroe v. City of Phoenix*, 248 F.3d 851, 857 (9th Cir.2001). A party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence. *Jenkins v. Union Pac. R.R. Co.*, 22 F.3d 206, 210 (9th Cir.1994). The district court must formulate a set of jury instructions that fairly and accurately states the law, covers the issues presented, and is not misleading. *Duran v. City of Maywood*, 221 F.3d 1127, 1130 (9th Cir. 2000) (per curiam).

Jones argues that she needed a jury instruction on group liability because the officers escorted all of the residents out of the house before they began to search, and, therefore, there were no witnesses to contradict the denials of the officers. Jones is specifically concerned that all officers denied responsibility for the condition of the living room, and that all officers denied urinating in the iron. The district court rejected Jones's proposed group liability instructions. On appeal, Jones claims that the district court's rejection of her instructions was reversible error because failure to give the instructions deprived her of the ability to hold the officers liable for the unreasonable search.

orandum disposition and are not further dis-

### 1. 42 U.S.C. § 1983

■ 42 U.S.C. § 1983 creates a cause of action against a person who, acting under color of state law, deprives another of rights guaranteed under the Constitution. Section 1983 does not create any substantive rights; rather it is the vehicle whereby plaintiffs can challenge actions by governmental officials. To prove a case under section 1983, the plaintiff must demonstrate that (1) the action occurred "under color of state law" and (2) the action resulted in the deprivation of a constitutional right or federal statutory right. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). There is no dispute that the officers were acting under color of state law. The dispute in this case was whether the officers unreasonably searched Jones's house in violation of her Fourth and Fourteenth Amendment rights.

■ In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (rejecting the concept of respondeat superior liability in the section 1983 context and requiring individual liability for the constitutional violation); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989) (requiring personal participation in the alleged constitutional violations); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir.1980) (holding that section 1983 liability must be based on the personal involvement of the defendant).

cussed here.

In *Chuman v. Wright*, we defined the contours of individual liability further when we stated a plaintiff could not hold an officer liable because of his membership in a group without a showing of individual participation in the unlawful conduct. 76 F.3d 292, 294 (9th Cir.1996). *Chuman* does not appear to bar any use of a group liability instruction, but does seem to require the plaintiff to first establish the "integral participation" of the officers in the alleged constitutional violation. *Id.* (quoting *Melear v. Spears*, 862 F.2d 1177, 1186 (5th Cir.1989)) (internal quotations omitted). *Chuman* clearly states that a "team liability" instruction that does not require any individual liability:

> is an improper alternative grounds [sic] for liability. It removes individual liability as the issue and allows a jury to find a defendant liable on the ground that even if the defendant had no role in the unlawful conduct, he would nonetheless be guilty if the conduct was the result of a "team effort."

*Id.* at 295. With this legal framework in place, we consider each of Jones's instructions below.

**2. Jones's proposed jury instructions**

*a. Proposed Instruction 1:*

When a plaintiff cannot specifically state which defendant police officers engaged in an unreasonable search of a plaintiff's residence, but there is evidence to specify that certain defendants were among the police officers who were inside plaintiff's residence, and the officers agree they are among the officers who were present, the jury can reasonably infer that the named officers were participants in the alleged unlawful conduct.

---

2. The holding in *Rutherford* that expressed a four-part test to determine if the individual officers acted in good faith has since been abrogated by *Graham v. Connor*, 490 U.S.

Jones's support for this instruction is *Rutherford v. City of Berkeley*, 780 F.2d 1444, 1448 (9th Cir.1986).[2] In *Rutherford*, the plaintiff alleged that while he was standing outside a Berkeley residence hotel three police officers threw him to the ground and punched, kicked, and handcuffed him. *Id.* at 1445. The defendants denied assaulting Rutherford but admitted they handcuffed him and placed him under arrest. *Id.* Rutherford was not certain which of the three officers actually punched or kicked him while he was on the ground, but he testified that he saw each of their faces while he was being assaulted. *Id.* There, we held that the district court erred when it granted a directed verdict for defendants because there was sufficient evidence for the jury to reasonably infer that the three officers participated in the beating of Rutherford. *Id.* at 1448.

Jones argues strenuously that she needed this instruction to allow the jury to draw an inference that although there was no evidence that identified any particular officer who caused the destruction in her living room and the urine smell in her iron, the officers who were present in her house during the search were individually liable for the damage.

We conclude that the district court did not abuse its discretion by refusing to give this instruction. The instruction swept too broadly, inviting the jury to find liability where our caselaw does not permit it. Moreover, to the extent that an instruction on group liability was necessary or appropriate, the district court gave other instructions that enabled the jury to consider that issue adequately.

---

386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). However, the *Graham* decision has no bearing on the group liability issue.

■ In her proposed instruction, Jones asks us to take the holding of *Rutherford* to an extreme we did not intend. In *Rutherford*, our focus was on permissible inferences. We did not indicate that the jury could find against the defendants without finding that they had some personal involvement in the beating. Rather, Rutherford had produced enough evidence to sustain a verdict against the officers, and we held that the jury could use Rutherford's testimony as evidence to find some individual participation by each officer in the unlawful conduct. *Id.* His testimony provided the required link of personal involvement to deprivation of his constitutional rights required to hold an officer liable. *Rutherford* does not suggest, as would Jones's proposed instruction, an inference of individual liability of individual officers based on merely being present at the scene of the search. In *Rutherford*, there was substantial evidence of individual liability of the defendant officers beyond their merely being present. The officers' testimony was that they participated in detaining, arresting and handcuffing Rutherford. Rutherford's testimony was that he saw each of their faces when he was being beaten. The officers were integral participants in the alleged unlawful act, not simply present outside the Berkeley residence hotel.

■ In this case, unlike *Rutherford*, the district court let the case go to the jury on the facts presented. Allowing the case to go to the jury followed our holding in *Rutherford*, in which we held that the jury should have been allowed to draw inferences about the liability of the individual officers based on Rutherford's testimony. *Id.* Even though the officers denied causing the damage to Jones's living room, the jury in Jones's case was allowed to draw reasonable inferences from the officers' testimony, Bowling's testimony, and the other evidence as to whether the officers should have been held individually liable. The permissible inferences in Jones's proposed instruction were adequately covered by the fact that the court submitted the case to the jury, and, as we explain below, by the instructions.

We decline to require an instruction that would invite a jury to find all of the officers liable for an alleged constitutional violation merely for being present at the scene of an alleged unlawful act. Contrary to our decision in *Chuman*, Jones's proposed instruction would have permitted the jury to find the individual officers liable for merely being present at the scene of the search. According to *Chuman*, a "team effort"[3] standard is impermissible because it "allows the jury to lump all the defendants together, rather than require it to base each individual's liability on his own conduct." 76 F.3d at 295. Nothing in Jones's proposed instruction requires the jury to find that the officers personally participated in the search, or that they were integral to the search in order to find them individually liable. In *Chuman*, we stated that either integral participation or personal involvement was required before a jury could find officers liable. *Id.* at 294. As written, Jones's instruction is an incorrect statement of law in the Ninth Circuit, and the district court was correct to reject it.

■ Besides the destruction in her living room, the other incident that Jones claimed required a group liability instruction was the urine smell in the iron. Jones claimed that when she went to iron her

---

**3.** Although Jones's proposed instruction is not a pure "group liability" or "team effort" instruction, our holding in *Chuman*, that prevents a finding of liability without establishing that each named defendant was a participant in the alleged unlawful conduct, still applies.

clothes on Sunday she smelled a funny smell from the iron. When she asked her son, he said he too had smelled it earlier in the day when he had ironed. Jones testified that the smell was that of urine. Only two officers were asked about urinating in the iron. Both officers denied it. As our analysis above demonstrates, holding individual officers who were merely present at the search liable for such misconduct would go well beyond what *Chuman* and *Rutherford* would allow.

■ The judge's decision not to give Jones's proposed instruction with regard to the alleged unreasonable search was not error for another reason: the judge gave the jury instructions that properly covered the law. *See Brewer v. City of Napa,* 210 F.3d 1093, 1097 (9th Cir.2000) (stating that failure to give a specific instruction is not error when the instructions taken together properly cover the subject). The judge gave the jury three instructions about supervisory liability,[4] which correctly stated the law that "[a] supervisor may be liable if there exists *either* (1) his or her personal involvement in the constitutional deprivation, *or* (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Redman v. County of San Diego,* 942 F.2d 1435, 1446 (9th Cir.1991) (*en banc*) (emphasis in

original) (internal quotation marks omitted).

The judge also gave instructions that would allow the jury to consider the interplay of two or more officers in a deprivation of constitutional rights. First, the judge gave Jones's "conspiracy instruction."[5] Second, the judge also gave a "concurrent cause" instruction.[6] This instruction allowed the jury to consider whether the actions of more than one officer contributed to a search that was unreasonable.

The jury had instructions that permitted it to find liability for individual officers and instructions that adequately covered the idea of liability for members of a searching team. Neither *Rutherford* nor *Chuman* permits an instruction that holds individual officers who were merely present at the house liable for this incident. Because we require individual participation, not simply being present or being a member of a team, the failure of the district court to give Jones's proposed instruction was not reversible error.

Much to the contrary, allowing the jury to find individual officers liable when there is no evidence to link them to specific actions would have been erroneous as a matter of law. *Chuman,* 76 F.3d at 294. Jones's requested instruction would have

---

4. The actual text of the three supervisory liability instructions is as follows: (1) "A supervisory police officer may be held liable for actions of subordinates if subordinate wrongdoing is known to the supervisory officer;" (2) "A supervisory official may be held liable in his individual capacity if he approved, condoned, or ratified, or encouraged the kind of unconstitutional conduct of which the complaint is made;" and (3) "A supervisor may be held liable under the Civil Rights Act where it is shown that he participated in or directed the unlawful conduct or if he sets in motion a series of acts by others which he knew or should have known could cause others to inflict the constitutional injury."

5. Jones's instruction stated: "Anyone who commands, directs, advises, encourages, procures, instigates, promotes, controls, aids, or abets a wrongful act by another is regarded by the law as being just as responsible for the wrongful act as the one who actually committed it."

6. The instruction stated: "[M]any factors or things or the conduct of two or more persons can operate at the same time either independently or together to cause injury or damage and in such a case each may be a proximate cause."

gone beyond *Rutherford;* instead of allowing a permissible inference, it would have afforded an impermissible basis for liability. Even if a group liability instruction could be given in very limited circumstances,[7] Jones's case is not one of them. We do not foreclose the possibility of a group liability instruction ever being given, but this case does not present the factual situation where such an instruction would be legally proper.

### b. Proposed Instruction 2:

No matter whose actions ultimately inflicted the plaintiff's injury, when the deprivation of rights is the result of a team effort all members of the team may be held liable.

Jones's instruction relies on *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553 (1st Cir.1989). In *Gutierrez–Rodriguez,* four police officers shot at the plaintiff as he was driving away from a traffic stop. The court held that under this factual scenario all of the participants could be held to be the proximate cause of plaintiff's injury. *Id.* at 561. Jones cannot rely on *Gutierrez–Rodriguez* because her proposed instruction is exactly like the one we rejected in *Chuman,* which had no requirement of integral participation or individual involvement in the allegedly unconstitutional activity.

Jones's proposed "team effort" instruction does not include *Chuman's* requirement of first finding some integral partic-

ipation or individual involvement in unlawful conduct. Therefore, the instruction was an incorrect statement of law in the Ninth Circuit, and the district court was correct in rejecting it.

### c. Proposed Instruction 3:

■ An officer who is present until a search is completed and the seized items removed from the premises may be held liable under section 1983. An officer who remains armed on the premises throughout a search may be held liable under section 1983. An officer who guards a detainee outside while a search proceeds may be held liable under section 1983 because his activities are integral to the search and renders [sic] him a participant. An officer who provides backup may be held liable under section 1983.

Jones's authority for this instruction is *James ex rel. James v. Sadler,* 909 F.2d 834, 837 (5th Cir.1990). Jones's proposed instruction seeks to hold that officers who fit into these categories are by definition "integral participants." In *James,* the Fifth Circuit held that the officers who remained armed during the search of the beauty shop were "integral to the search" and, therefore, were participants, rather than just bystanders. *Id.* The Fifth Circuit did not hold that remaining armed meant that the officers were participants. Rather, because of the factual situation in

---

7. There may be times when a group liability instruction would be proper in the search of the house. Such an instruction would likely mirror a typical "res ipsa loquitur" instruction and require that the actions of the police officers deprive the victim of any chance to learn exactly which officer took what actions in the house; that is that the house was under the "exclusive control" of the officers. Jones's house was under the officers' exclusive control in that Bowling, Arnold and Dominguez were handcuffed and forced to

remain on the couch and the officers could do as they pleased. But the house was not under their exclusive control such that the officers were the only ones who knew what occurred during the search. We decline to require an instruction that would invite a jury to find all of the officers liable for an alleged constitutional violation under these facts. Jones had detailed testimony from the officers as to their personal participation in the search and eyewitnesses to the search of the living room.

*James*, those armed officers played an integral role in the conduct, and therefore could be held liable for her alleged constitutional violations.

Our analysis has shown that holding an officer liable who was merely present at the search is not permissible. In this case Jones cannot rely on *James* to state that simply because an officer remains armed during a search, he is a participant and therefore liable for any violations. The evidence in this case did not indicate that those officers who simply remained outside were integral participants in the "unlawful conduct," that is, the destruction of personal property and the manner in which Jones's house was searched. Therefore, as a matter of law, the district court did not err when it refused to give this instruction.

## CONCLUSION

Jones proposed three instructions that were properly rejected by the district court. The permissible inference in her first instruction was covered when the case went to the jury, and the instructions given by the district court adequately covered all of the multiple actor issues in the case. Jones's second instruction was a misstatement of law in the Ninth Circuit. Her third instruction sought to impose liability based simply on the job category, a violation of our requirement that integral participation and individual liability be proved in every case. We reject the idea that mere presence at a search or membership in a group, without personal involvement in and a causal connection to the unlawful act, can create liability under section 1983.

The judgment of the district court is AFFIRMED.

SILVERMAN, Circuit Judge, concurring in the judgment:

I respectfully concur in the result. I write separately because, in my view, the *Rutherford* instruction submitted by the plaintiff was a correct statement of the law. It was properly refused only because it was not justified by the evidence. Specifically, the evidence at trial was not susceptible of the interpretation that the damage occurred while no one but the officers was present. To the contrary, the residents testified to what they say they witnessed the police officers doing. The police officers gave their opposing version of the story, and it was for the jury to decide which to believe.

As a general rule, a res ipsa-*type* instruction can be given in a case such as this if: *first*, the defendants are uniquely positioned, to the exclusion of others, to know the circumstances that caused the plaintiff's injury; and *second*, the injury would not normally occur without wrongdoing on the defendants' part. *See Reber v. United States*, 951 F.2d 961, 964 n. 1 (9th Cir.1991). Res ipsa belongs to the world of negligence. This case, like *Rutherford*, involves an intentional constitutional tort. However, the principle of proof is the same. If government actors/defendants, due to circumstances of their own creation, prevent the plaintiff from identifying precisely which of them caused the plaintiff's injury, the jury can infer causation against those in exclusive control of the event. This is just what the proposed *Rutherford* instruction would have permitted. As I see it, the instruction was correctly refused because it was not supported by the evidence, not because it misstated the law.