K. Jamel **WALKER** and Dale R. **Hurd, Plaintiffs,**

v.

Jeanne S. **WOODFORD, Director;** Stuart **Ryan,** Warden (A), Does 1–10, **Defendants.**

No. 05CV1705–LAB(NLS).

United States District Court, S.D. California.

Sept. 12, 2006.

K. Jamel Walker and Dale R. Hurd, Calipatria, California, pro se.

Deputy Attorney General G. Michael German, Department of Justice, San Diego, for Defendants.

## ORDER ADOPTING REPORT AND RECOMMENDATION AS MODIFIED, DENYING MOTION FOR PRELIMINARY INJUNCTION, GRANTING IN PART AND DENYING IN PART REQUESTS FOR JUDICIAL NOTICE, STRIKING CERTAIN EXHIBITS, GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS, AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE

BURNS, District Judge.

Plaintiffs K. Jamel Walker and Dale Hurd, inmates at Calipatria State Prison ("Calipatria"), filed a complaint in this case on August 30, 2005, seeking relief under 42 U.S.C. § 1983 for alleged violations of their Eighth Amendment rights. Plaintiffs complain that lights in their cells, which they are not permitted to cover, are turned on 24 hours a day. Plaintiffs allege that the light prevents them from sleeping adequately, and that this has caused a variety of sleep-related problems.

On October 4, 2005, Plaintiffs filed a motion seeking a preliminary injunction. Plaintiffs ask that Defendants be enjoined from subjecting them and all of their fellow inmates to light 24 hours a day, and from disciplining Plaintiffs and all of their fellow inmates for covering the lights in their cells. On January 20, 2006, after an extension of time by Magistrate Judge Nita Stormes, Defendants filed their opposition to this motion. On February 9, Defendants filed a supplemental memorandum of points and authorities opposing the

motion. On February 14, Plaintiffs replied to Defendants' opposition.

On January 20, 2006, Defendants filed motions to dismiss and to strike, pursuant to Fed.R.Civ.P. 12(b), (b)(6), and (f); as well as a request for judicial notice accompanied by a declaration by G. Michael German. On February 9, Plaintiffs filed a request for judicial notice, along with a declaration from each of them. Plaintiffs filed another request for judicial notice on February 14, accompanied by a declaration by Plaintiff Walker. On February 15, Defendants filed a declaration by Defendant Ryan.

On February 17, Judge Stormes took the motion under submission, and on March 1, issued a report and recommendation ("R & R") recommending that (1) the parties' requests for judicial notice each be granted in part and denied in part; (2) Plaintiff Hurd's claims be dismissed without prejudice for failure to exhaust; (3) the Fourteenth Amendment claim be dismissed with leave to amend; (4) the claims against Defendant Woodford be dismissed with leave to amend; (5) the request for attorney's fees be stricken; (6) Defendants' motion to dismissed be denied in all other respects; (7) the motion for preliminary injunction be denied; and (8) various exhibits be stricken. Defendants did not object to the R & R. On May 5, 2006, Plaintiffs filed their objections to the R & R, to which Defendants did not reply.

## I. LEGAL STANDARD

A district court has jurisdiction to review the report and recommendation on dispositive pretrial motions. Fed.R.Civ.P. 72(b). "The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule." *Id.; see also*

28 U.S.C. § 636(b)(1)(C). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Thus, this Court reviews those parts of the report and recommendation to which a party has filed specific written objections.

 Allegations asserted by pro se petitioners, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Thus, where a plaintiff appears *in pro per* in a civil rights case, the court must construe the pleadings liberally and afford plaintiff any benefit of the doubt. *See Karim–Panahi,* 839 F.2d at 623. Although the Court must construe the pleadings liberally, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh,* 814 F.2d 565, 567 (9th Cir.1987).

The Court, although construing Plaintiffs' complaint liberally, will not assume that Defendants have violated their rights in ways that have not been alleged. *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

> The standard used to evaluate a motion to dismiss is a liberal one, particularly when the action has been filed pro se. However, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss.

*Ivey v. Board of Regents of University of Alaska,* 673 F.2d 266, 268 (9th Cir.1982) (citations omitted).

To state a claim under § 1983, Plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)).

## II. PLAINTIFFS' OBJECTIONS TO R & R

Plaintiffs raise eight specific objections. They object that:

1. Judge Stormes erred in considering Defendant Ryan's declaration, which they contend was untimely, in opposition to the motion for preliminary injunction;[1]

2. This declaration contained false statements and should have been discounted;

3. Judge Stormes erred in refusing to consider or take judicial notice of their exhibits submitted in support of their motion for preliminary injunction;

4. They are entitled to preliminary injunctive relief because they have properly alleged "grave sleep problems";

5. Under Ninth Circuit precedent, subjecting prisoners to constant illumination is *per se* unconstitutional;

6. Plaintiff Hurd has exhausted his administrative remedies and therefore may properly pursue his claims;

7. Defendant Woodford is a proper defendant; and

8. Plaintiffs' equal protection claim is properly pleaded.

(Pls.' Obj. to R & R at 1–2.)

The first four objections pertain solely to Plaintiffs' motion for preliminary injunction. Although Plaintiffs requested in their opposition that four of Defendants' exhibits be struck, they do not object to the R & R's disposition of this request. They also do not object to most of the factual findings, to the R & R's recommendation that Defendants' request for judicial notice be granted in part, to the R & R's recommendation that their request for attorneys' fees be stricken, or to a number of other portions of the R & R. The Court has reviewed the R & R in its entirety and is satisfied that those portions not objected to are correctly analyzed and the correct disposition is recommended. Therefore, the Court will review in this order only those portions of the R & R to which Plaintiffs have specifically objected. The remainder, including most of the factual report, is hereby adopted.

## III. FACTUAL BACKGROUND

Except where noted, the following factual background is taken from those portions of the R & R to which no objection was received, and which the Court has therefore adopted.

In this civil rights case, Plaintiffs Walker and Hurd, housed at California's Calipatria State Prison, bring this action to challenge the conditions of their confinement. Each of Plaintiffs' cells is lit by two 34–watt fluorescent lights which can be turned on or off by inmates. Each cell is also lit 24–hours a day by a 7–watt fluorescent bulb that is alleged to be equivalent a 40–60 watt incandescent bulb. Plaintiffs challenge the 24–hour lighting.

Between 1994 and 2004, Callpatria staff allowed inmates to cover cell light fixtures

---

1. The R & R explains that, although Defendant Ryan's declaration was submitted both in opposition to Plaintiffs' motion for preliminary injunction and in support of Defendants' motion to dismiss and to strike, it was considered for the former purpose only. (R & R at 16, n. 7.)

at night. Beginning December 20, 2004, however, Defendant Ryan issued a memorandum prohibiting this practice, and warning inmates that they would be subject to disciplinary action if violated this rule. Plaintiffs allege that as a result of this new policy, they have been deprived of adequate sleep and have suffered various physical, emotional, and mental symptoms such as headaches; eye strain; fatigue; irritability; and difficulty concentrating and sleeping. They allege that prisoners housed in other state facilities, as well as inmates in Calipatria's administrative segregation unit are not subjected to 24–hour illumination.

Plaintiffs pursue claims pursuant to 42 U.S.C. § 1983, arguing that the conditions of their confinement violate their Eighth Amendment rights and that the unequal application of the lighting rules violates their Fourteenth. Amendment equal protection rights. In addition to moving for a preliminary injunction, Plaintiffs seek declaratory and permanent injunctive relief, compensatory and punitive damages, and attorneys' fees and costs.

On May 4, 2006, Plaintiff Walker filed a notice of change of address. He is no longer at Calipatria, but is now being housed at a facility located in Ione, California.[2] Neither Plaintiff has attempted to show a reasonable expectation that Plaintiff Walker may return to Calipatria.

## IV. DISCUSSION

### A. Mootness of Motion for Injunctive Relief

■ As discussed below, Plaintiff Hurd's claims are being dismissed without prejudice for failure to exhaust administrative remedies. Because Plaintiff Walker

has been transferred and neither Plaintiff has attempted to show that there is a reasonable expectation or demonstrated probability of his returning to Calipatria, his request for injunctive relief is moot. *Johnson v. Moore,* 948 F.2d 517, 519 (9th Cir.1991). (citing *Darring v. Kincheloe,* 783 F.2d 874, 876 (9th Cir.1986)). For these reasons, rather than the reasons set forth in the R & R, the motion for preliminary injunction is **DENIED.**

The objections pertaining to this motion (that Judge Stormes erred in considering Defendant Ryan's declaration, which they contend was untimely; that this declaration contained false statements and should have been discounted; that Judge Stormes erred in refusing to consider or take judicial notice of their exhibits submitted in support of their motion for preliminary injunction; and that Plaintiffs are entitled to preliminary injunctive relief because they have properly alleged "grave sleep problems") are thus also moot and will not be considered at this time. *Forest Guardians v. Johanns,* 450 F.3d 455, 461 (9th Cir.2006) (holding that federal courts lack jurisdiction to consider moot questions or to declare principles or rules of law which cannot affect the matter in issue in the case before them).

### B. Objection: Subjecting Prisoners to 24–Hour Illumination Is *Per Se* Unconstitutional

Plaintiffs note that the R & R says that "constant illumination can violate an inmate's Eighth Amendment rights." (Memo in Support of Obj. to R & R at 11 (citing R & R at 10)). They argue that this is legal error, and contend that Ninth

---

**2.** Plaintiff Walker's notice merely gives his new address and does not name the facility. Apparently it is the Mule Creek State Prison, which is the only adult facility listed on the California Department of Corrections and Re-

habilitation's website as being located at Ione. *See* Map of Adult Facilities, *available at* http://www.cdcr.ca.gov/Visitors/docs/facility_map.pdf. In any case, it is clear he is no longer housed at Calipatria.

Circuit precedent "establishes that subjecting prisoners to constant illumination *is* unconstitutional, not 'may be' unconstitutional." (Memo in Support of Obj. to R & R at 10 (capitals omitted).) This is their sole objection on this point. They conclude, "Thus, Judge Stormes' use of the qualifying phrase 'can violate an inmate's Eighth Amendment rights' when discussing Ninth Circuit precedent on this point, is not a fair reading . . . ." (Memo in Support of Obj. to R & R at 13.)

Plaintiffs cite *Keenan v. Hall,* 83 F.3d 1083, 1090–91 (9th Cir.1996), which opines that "[t]here is no legitimate penological justification for requiring [inmates] to suffer physical and psychological harm by living in constant illumination. This practice is unconstitutional." (quoting *LeMaire v. Maass,* 745 F.Supp. 623, 636 (D.Or. 1990), *vacated on other grounds,* 12 F.3d 1444, 1458–59 (9th Cir.1993)). It is on these two cases that Plaintiffs rest their argument.

Plaintiffs have misconstrued the holdings of both *Keenan* and *LeMaire* as being broader than they in fact are. *Keenan,* as Plaintiffs note, dealt with a situation in which an inmate alleged that large florescent lights directly in front of and behind his cell shone into his cell 24 hours a day, so that his cell was "constantly illuminated, and [he] had no way of telling night or day . . . ." 83 F.3d at 1091. Plaintiffs argue that "if lighting located outside an inmate's cell is enough to cause him harm when shining into the cell, a fortiori, a light source located inside an inmate's cell is enough to cause him harm under Ninth Circuit law." (Memo in Support of Obj. to R & R at 12.) They also argue that because the lights in *Keenan* were outside the cell, the lights at issue here, which are located inside the cells, are necessarily brighter. (*Id.*) This reasoning is spurious. The focus in *Keenan* was on the brightness of the light and the fact that it shone in

from two directions so that there was no escape from it. The fact that a bulb is located inside a cell rather than outside is not necessarily determinative of whether lighting conditions result in a Constitutional violation. Because the factual situation is somewhat different in this case, the Constitutional analysis of this factual situation is necessarily different as well. *See Wills v. Terhune,* 404 F.Supp.2d 1226, 1231 (E.D.Cal.2005) (distinguishing *Keenan* on the basis of the intensity of the light and its effects on the prisoner).

■ In both *Keenan* and *LeMaire,* lighting conditions potentially violated Constitutional requirements because the light was allegedly causing psychological and/or physiological harm, and not merely because it was turned on. Plaintiffs are, in effect, asking the Court to read the *Keenan* holding as if it said "there is no legitimate penological justification for requiring inmates to live in constant illumination," without reference to "physical and psychological harm." As far as the Court is aware, neither the Ninth Circuit nor any other federal court has held that prisoners have a right to sleep in complete darkness, as Plaintiffs request. *See* Compl. at 7 (requesting a judicial determination that the policy of denying Plaintiffs "the ability to turn off their cell lights and sleep in total darkness, is unconstitutional"). Rather, as the R & R notes, other courts have held that continuous low-wattage lighting is permissible in jails or prisons. *See, e.g., O'Donnell v. Thomas,* 826 F.2d 788, 790 (8th Cir.1987) (noting holding that continuous lighting in a holding cell was not unreasonable given the need for jail security and the need to monitor the prisoner); *King v. Frank,* 371 F.Supp.2d 977, 984–85 (W.D.Wis.2005) (holding that constant illumination of cell by 9-watt fluorescent light was Constitutionally permissible); *Wills,* 404 F.Supp.2d at 1230–31

(E.D.Cal.2005) (holding that 24–hour illumination by 13–watt bulb was not objectively unconstitutional).

Furthermore, even if 24–hour lighting infringed on a prisoner's Constitutional rights, it may nevertheless be valid if it is reasonably related to legitimate penological interests, as Defendants argue is the case here. *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Continuous low-wattage lighting may therefore be permissible where it is based on legitimate prison security concerns. *See King,* 371 F.Supp.2d at 984–85.

While Defendants' motion to dismiss Plaintiffs' Eighth Amendment claim is being denied by this order, this particular objection is **OVERRULED.**

### C. Objection: Plaintiff Hurd Has Exhausted His Administrative Remedies

Plaintiffs object that Plaintiff Hurd pursued administrative remedies in a similar situation in 1998 and that this satisfies the exhaustion requirement. They argue that the policy regarding covering lights has fluctuated since 1994 but that Defendant Ryan is the only warden who did not relent when asked to permit inmates to cover their lights. (Memo in Support of Obj. to R & R at 14.) They characterize the policy as a "reprise" of previous policies. (*Id.*) Plaintiffs are aware that there is no "futility" exception to the exhaustion requirement, and emphasize that they are *not* arguing that it would be futile to re-argue this claim. *See Booth v. Churner,* 532 U.S. 731, 741 & n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Rather, they argue that prison regulations prevent Hurd from refiling a previously denied appeal. (*Id.* at 15) (citing California Code of Regulations, Title 15, §§ 3084.3(c)(2) and 3084.2(g)(1)-(3)). Plaintiffs urge the Court to find that "there were no remedies available to Hurd for him to exhaust in 2004

when Ryan decided to enforce a policy that had been previously unenforced." (*Id.* at 15.)

■ In short, Plaintiffs are arguing that prison regulations prevent Hurd from pursuing administrative remedies because it is the same issue. Defendants, however, have represented to the Court that Defendant Ryan's policy adopted in December, 2004, was new. The Court notes that Plaintiffs have, from the start, represented that the policy they are challenging was a new one, and that it was instituted by Defendant Ryan. *See, e.g.,* Compl. at 6 ("On December 20, 2004, defendant Ryan issue[d] a memorandum prohibiting ... inmates ... from covering their light fixtures;" "Since December 21, 2004, [Calipatria] staff have been vigorously enforcing Ryan['s] policy prohibiting the covering of the cell light fixtures, under threat of disciplinary action ....") Plaintiffs are therefore, in essence, predicting that administrators will interpret Ryan's policy as a reiteration of the previous policy rather than as a new policy, while Defendants have indicated that it is a new policy.

Because the policy at issue was implemented by Defendants and they are charged with administering it, the Court defers to their interpretation of it. *Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (holding that an official's interpretation of his own regulations is controlling unless "plainly erroneous or inconsistent with the regulation.") Plaintiffs' objection is therefore **OVERRULED.**

### D. Objection: Defendant Woodford is a Proper Defendant

The R & R recommended that Defendant Woodford be dismissed because Plaintiffs had not alleged facts that would connect her with any Constitutional viola-

tion. Plaintiffs' objection consists primarily of argument that Defendant Woodford is chargeable with the knowledge of her subordinates and agents. (Memo in Support of Obj. to R & R at 16–18.)

 Defendant Woodford cannot be liable under § 1983 under agency or *respondeat* theories, where she neither knew of or participated in any Constitutional violations. "In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no *respondeat superior* liability under section 1983." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir.2002) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

Plaintiffs also suggest that because Defendant Woodford should have about the lighting regulation and about the arrangement of lights at Calipatria, she therefore participated in violations of their Constitutional rights. Plaintiffs cite the California Code of Regulations, title 15, § 3380(c), arguing that this regulation required Defendant Woodford to specifically approve Defendant Ryan's policy. This interpretation is equivocal at best, and as the R & R points out, Plaintiffs' own pleadings suggest that Defendant Woodford did not make or personally approve the policy. (R & R at 13–14.) But even if the Court accepted this interpretation, approval of the policy, in itself, would not give rise to § 1983 liability.

As discussed previously, the lighting arrangement at issue here is not *per se* unconstitutional. Therefore, even assuming that Defendant Woodford knew how the lighting was configured at Calipatria, and even if she knew of Ryan's policy forbidding covering lights, she would not necessarily know that Plaintiffs' Constitutional rights were being violated. Even if she had reason to know, or at least to suspect that perhaps inmates' rights were being violated, Plaintiffs have not adequately alleged that she in fact did know.

 "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under this standard, "an official's failure to alleviate a significant risk that he should have perceived but did not" cannot serve as a basis for § 1983 liability. *Id.* Plaintiffs' allegations are insufficient in this respect.

As discussed earlier, 24–hour lighting is not unconstitutional *per se*, particularly where it is not accompanied by physical or psychological harm. Contrary to the statement in Plaintiffs' objections, the Court has reviewed the Complaint and finds no allegations that Defendant Woodford knew any inmates were suffering physical or psychological harm.

Although they did not do so in their complaint, Plaintiffs now attempt to allege that "Woodford was made aware of the adverse effects of the lighting policy, not only by plaintiff but by numerous other inmates at [Calipatria]." (Memo in Support of Obj. to R & R at 16–17.) However, in support of this allegation, they argue that because Woodford is head of the Department of Corrections and Rehabilitation, she is responsible for Constitutional violations. (*Id.* at 17, n. 4.) This is merely a reiteration of the *respondeat superior* argument.

In their opposition to Defendants' motion to dismiss and to strike, Plaintiffs suggest that grievances about the lighting

reached Woodford's office. (Memo in Support of Opp'n to Mot. to Dismiss, at 20.) However, the records of which Judge Stormes took judicial notice[3] show that the grievances regarding the lighting were not decided by Defendant Woodford herself, but by her designee, as permitted under state law. *See* R & R at 14 (citing records). Plaintiffs accept this as true, but argue that this "does not shield Woodford from liability." (Memo in Support of Obj. to R & R at 17.) In this context, Plaintiffs argue that Defendant Woodford is liable for the acts of her designee, whether or not she had actual knowledge. As previously discussed, however, this is not a correct reading of § 1983.

Because Plaintiffs have not alleged facts showing that Defendant Woodford participated in violations of Plaintiffs' Constitutional rights, this objection is **OVERRULED** and Plaintiffs' claims against her will be **DISMISSED** without prejudice.

### E. Objection: Plaintiffs' Equal Protection Claim Is Properly Pleaded.

Plaintiffs proceed under two alternate theories: (1) they have sufficiently alleged discriminatory intent; or (2) in the alternative, a liberal construction of their pleadings reveals an equal protection claim.

 Plaintiffs' first objection represents their sole objection to the R & R's reasoning. An equal protection claim under § 1983 includes must rely on allegations that Defendants acted with a discriminatory intent or purpose to discriminate against Plaintiffs. *Lee v. City of Los An-*

*geles,* 250 F.3d 668, 686–87 (9th Cir.2001) (citing *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir.1998), *cert. denied,* 525 U.S. 1154, 119 S.Ct. 1058, 143 L.Ed.2d 63 (1999)). Plaintiffs' objection as to their first theory is cursory. The Court has reviewed the pleadings, and finds that Plaintiffs have not alleged discriminatory intent on the part of Defendants Ryan or Woodford at all. At most, Plaintiffs have alleged that Ryan and/or Woodford knew the lighting policy would affect prisoners differently depending on which cells they were housed in. As Plaintiffs' pleadings have made clear, prisoners can be—and frequently are—transferred and do not necessarily remain in the same cell or at the same facility. It is prisoners themselves, and not the cells in which they are housed, who possess equal protection rights. While it is clear that Defendant Ryan's policy was directed at a particular group of cells, there is no allegation that prisoners themselves were the objects of discriminatory intent. Because Plaintiffs have not alleged discriminatory intent against them, the Court will not supply this missing element. *Ivey,* 673 F.2d at 268.

Plaintiffs' second objection is essentially that the R & R should have construed their complaint more liberally, so as to incorporate additional theories of recovery within the general category of equal protection. In support of their second theory, Plaintiffs provide a completely new but thorough and clear argument of their Fourteenth Amendment equal protection claim. Plaintiffs cite authority for the

---

**3.** "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *U.S. v. Ritchie,* 342 F.3d 903, 907–08 (9th Cir.2003) (citing Fed.R.Civ.P. 12(b)). A court

may, however, consider certain materials, including documents attached to the complaint, documents incorporated by reference in the complaint, or—as in this case—matters of judicial notice, without converting the motion to dismiss into a motion for summary judgment. *Id.*

proposition that the right to be free from cruel and unusual punishments is a fundamental right, and argue that this triggers some form of equal protection review, whether strict scrutiny or rational basis review.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)).

Plaintiffs' second argument fails because they do not allege that they have been treated differently from similarly situated persons.

> The first step in equal protection analysis is to identify the defendants' asserted classification of groups. The groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified. An equal protection claim will not lie by conflating all persons not injured into a preferred class receiving better treatment than the plaintiff.

*Thornton v. City of St. Helens*, 425 F.3d 1158, 1166–67 (9th Cir.2005) (citations, alterations, and internal quotation marks omitted).

Accepting Plaintiffs' pleadings as true, three large groups of inmates are identified: those housed in general population cells at Calipatria, who are subject to 24–hour lighting under Defendant Ryan's policy; those housed in the administrative segregation portion of Calipatria, who are not subject to 24–hour lighting; and those who are housed at other institutions, who are not subject to 24–hour lighting.

Plaintiffs have left it an open question which prisoners they consider to be "similarly situated." However, regardless of which group of prisoners is chosen for comparison, Plaintiffs have not stated a claim. As Plaintiffs point out, the lighting conditions are the product of both the physical structures in which prisoners are housed and the policies in place at that portion of the institution in which the prisoners are housed. *See* Memo in Support of Obj. to R & R at 4, 6–7 (asserting that no other institution housing level IV inmates has 24–hour security lights and that Calipatria's administrative segregation unit was constructed without 24–hour cell security lights).

■■■ A successful equal protection claim may be brought by a "class of one," when the plaintiff alleges that it has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). However, Plaintiffs have not alleged that they in particular are being intentionally treated differently from any others. Plaintiffs have specifically rejected the possible theory that they are being treated differently than similarly situated prisoners in Calipatria's general population. Rather, their pleadings suggest they are attempting to bring their claims on behalf of the entire general population.[4] In any event, Plaintiffs do not

---

4. The Court rejects the contention that Plaintiffs are representing other prisoners. Plaintiffs have not complied with the requirements of Fed.R.Civ.P. 23 for class actions, and lack standing to raise the claims of other prisoners who are not parties to this action. Moreover, Plaintiffs do not allege that any other prisoners in Calipatria's general population are similarly aggrieved or have suffered Constitutionally cognizable harms, or that any other such prisoners have exhausted their administrative remedies.

state a claim with respect to other prisoners in Calipatria's general population because they are subject to the exact same conditions and policy. The mere fact that Defendants' facially neutral policies had a foreseeable impact on an identifiable group does not establish an equal protection violation. *Lee,* 250 F.3d at 687.

Prisoners in Calipatria's administrative segregation unit, or in other institutions, are not similarly situated. As Plaintiffs point out, the administrative segregation unit was constructed later, with lighting that prisoners can turn off, and is physically separate. (Compl. at 5–6; Memo in Support of Obj. to R & R at 6.) Furthermore, as Plaintiffs point out, prisoners in administrative segregation are classified differently from prisoners in Calipatria's general population for security and/or disciplinary purposes, and are therefore housed separately and subject to separate restrictions in other respects. (Memo in Support of Obj. to R & R at 6–7.)

Prisoners housed in other institutions are likewise not similarly situated. Aside from the obvious fact that those prisoners are housed in completely different physical facilities under the supervision of different wardens, Plaintiffs' opposition also cites legal authority, and provides argument, that the policies of each prison are set individually by the warden of each institution. (Memo in Support of Obj. to R & R at 17.) Prisoners in other institutions are therefore not subject to any of Defendant Ryan's policies, but rather are subject to the various policies and restrictions put in place by the wardens at their respective institutions.

In other words, the other groups of prisoners that Plaintiffs suggest are "similarly situated" are in fact dissimilarly situated in a number of significant respects. Because the prisoners housed in Calipatria's administrative segregation unit or in other institutions are not similarly situated, Plaintiffs do not state a claim with respect to them.

Plaintiffs attempt to pick holes in the logic of applying the policy to one physical segment of one institution, and point out that prisoners housed in cells not subject to the lighting policy at issue here may in fact present greater security risk. However, prison officials are entitled to "wide-ranging deference in the adoption and execution of policies necessary to preserve internal order and maintain institutional security." *Whitley v. Albers,* 475 U.S. 312, 321–22, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). The Court therefore accords Defendants Ryan and Woodford such deference and will not second-guess the wisdom of this decision. The fact that the prisoners are dissimilarly situated is enough to defeat an equal protection claim.

The R & R recommends dismissing this claim without prejudice. Therefore, this objection is **OVERRULED**. Plaintiffs' equal protection claim will be dismissed without prejudice.

## V. CONCLUSION AND ORDER

For these reasons, Plaintiffs' objections to the R & R are **OVERRULED**. The Court therefore **ADOPTS** the R & R as modified herein.

Plaintiff Hurd's claims are hereby **DISMISSED** without prejudice for failure to exhaust. Plaintiffs' motion for preliminary injunction is **DENIED** as moot. Defendants' motion to dismiss the Eighth Amendment claim is **DENIED**. Plaintiffs' Fourteenth Amendment equal protection claim is **DISMISSED** with leave to amend. All claims against Defendant Woodford are **DISMISSED** with leave to amend. Plaintiffs' request for attorney's fees is **STRICKEN**. Defendants' motion to dismiss and to strike is **DENIED** in all other respects.

The following requests for judicial notice are **GRANTED**: Defendants' request with regard to Exs. C and D to the declaration of G. Michael German; and Plaintiffs' request with regard to Ex. B to the Declaration of Plaintiff Hurd in Support of Opposition to Motion to Dismiss. The parties' requests for judicial notice in support of or in opposition to the motion for preliminary injunction are **DENIED** as moot. All other requests for judicial notice are **DENIED**.

The R & R recommended striking certain exhibits, and neither party has objected. Therefore, the exhibits, other than Exs. C and D, attached to the Declaration of G. Michael German; the exhibits, other than Ex. B, attached to Declaration of Plaintiff Hurd in Support of Opposition to Motion to Dismiss; and all exhibits attached to the Declaration of Plaintiff Walker in Support of Opposition of Motion to Dismiss are hereby **STRICKEN**.

Plaintiff Walker is granted leave to amend his complaint to remedy the defects identified in it. If he wishes to do so, he must file and serve his amended complaint within *30 calendar days of the file stamp date on this order.*

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION RE: DEFENDANTS' MOTION TO DISMISS AND PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

STORMES, United States Magistrate Judge.

California prisoners K. Jamel Walker ("Plaintiff Walker") and Dale R. Hurd ("Plaintiff Hurd") brought this *pro se* civil rights suit challenging the conditions of their confinement, namely, the prison's use of 24-hour fluorescent lighting in their cells, a practice they allege deprives them of adequate sleep. Defendants move to dismiss the complaint on various grounds.

Plaintiffs oppose the motion to dismiss and have also separately moved for a preliminary injunction. The Court finds the issues appropriate for decision on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1). After a thorough review, the Court **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED** in part and **DENIED** in part, and Plaintiffs' motion for preliminary injunction be **DENIED**.

### Background

Because this case comes before the Court on a motion to dismiss, the Court must accept as true all material allegations in the complaint and must also construe the complaint, and all reasonable inferences drawn therefrom, in the light most favorable to Plaintiffs. *Thompson v. Davis,* 295 F.3d 890, 895 (9th Cir.2002). Plaintiffs are inmates committed to the custody of the California Department of Corrections ("CDC") currently housed at Calipatria State Prison ("Calipatria"), which is a maximum security facility. [Complaint[1] at 1.] Defendant Jeanne Woodford is the Director of CDC, and Defendant Stuart Ryan is the warden at Calipatria. [Complaint at 4.]

According to the complaint, each cell at Calipatria is equipped with a light fixture containing two fluorescent tube bulbs, each emitting approximately 34 watts of light. [Complaint at 5.] Each cell has a light switch enabling inmates to turn these lights on or off. [*Id.*] Additionally, each light fixture contains a 7-watt compact fluorescent bulb, equivalent to 40–60 watts of incandescent lighting. [Complaint at 5.] Inmates do not have the capability to turn off this light. [*Id.*] Between 1994 and 2004, Calipatria staff allowed inmates to cover the cell light fixtures during the night if they wished. [*Id.*] On December

---

**1.** The Court is referring to the typewritten document attached to the form complaint.

20, 2004, however, Defendant Ryan issued a memorandum prohibiting inmates from covering their light fixtures, and warning that inmates who do so will be subject to disciplinary action. [*Id.* at 6.] Plaintiffs allege that as a result of enforcement of this policy, they have been deprived of adequate sleep and have suffered such symptoms as headaches, eye strain, fatigue, irritability, and difficulty focusing, concentrating, falling asleep and remaining asleep. [*Id.*] They further allege that California prisoners housed in other facilities and inmates housed in Calipatria's administrative segregation unit are not subject to this same night-time lighting. [*Id.* at 5.]

Based on these facts, Plaintiffs allege an Eighth Amendment claim for cruel and unusual conditions of confinement and also a Fourteenth Amendment equal protection claim based on what they perceive as unequal treatment among inmates regarding the night-time lighting. [Complaint at 7–9.] They seek declaratory and permanent injunctive relief, compensatory and punitive damages, attorneys fees and costs. [Complaint at 10.] They have also separately moved for a preliminary injunction prohibiting the prison's use of night-time lighting while this case is pending. [Motion for Preliminary Injunction.]

Defendants move to dismiss, arguing that Plaintiff Hurd did not properly exhaust his administrative remedies before filing this lawsuit. [Defendants' Memorandum of Points & Authorities in Support of Motions to Dismiss & To Strike ("Def. Points & Auth.") at 1–5.] They further argue that even assuming the allegations in the complaint are true, Plaintiffs have failed to state a claim for relief under either the Eighth Amendment or the Fourteenth Amendment, and also that Defendant Woodford is not a proper defendant. [Def. Points & Auth. at 5–9 & n. 3.] They also request that Plaintiffs' demand for attorneys fees and punitive damages be stricken as improper. [Def. Points & Auth. at 9–10.]

Plaintiffs oppose the motion to dismiss. [Plaintiffs' Memorandum of Points & Authorities in Opposition to Defendants' Motions to Dismiss and to Strike ("Pl.Opp."); Declaration of Dale R. Hurd in Support of Opposition to Motions to Dismiss and Strike ("Hurd Decl."); Declaration of K. Jamel Walker in Support of Opposition to Motions to Dismiss and Strike ("Walker Decl.").] They assert that Plaintiff Hurd properly exhausted his administrative remedies by filing a grievance in 1998 regarding the night-time lighting. [Pl. Opp. at 8–12.] They also argue that they properly stated claims under the Eighth Amendment and Fourteenth Amendments against both Defendants, and that the requests for punitive damages and attorneys fees are also proper. [Pl. Opp. at 13–25.]

Regarding the motion for preliminary injunction, Plaintiffs argue that they have established a high likelihood of success on the merits of their claims and also that they will suffer irreparable injury if the lighting is not enjoined while this case is pending. [Plaintiffs' Memorandum of Points & Authorities in Support of Motion for Preliminary Injunction.] Defendants oppose the request for a preliminary injunction, arguing that Plaintiffs have established neither a likelihood of success on the merits or that they will suffer irreparable injury. [Defendant's Memorandum of Points & Authorities in Opposition to Plaintiffs' Motion for Preliminary Injunction.]

### *Request to Strike Documents and Requests for Judicial Notice*

█ Before turning to the merits, a housekeeping matter must be addressed. Plaintiffs request that the Court strike four different exhibits submitted by Defendants, which Plaintiffs claim cannot be con-

sidered by the Court in ruling on a motion to dismiss under Rule 12(b)(6). [Pl. Opp. at 2–7.] The parties also both request that the Court take judicial notice of various documents they have submitted in support of their filings. In general, the Court's consideration of evidence outside the complaint serves to convert a motion to dismiss into a motion for summary judgment, which requires specific notice to the non-moving party, particularly in the case of a *pro se* prisoner. *See United States v. Ritchie,* 342 F.3d 903, 907–08 (9th Cir.2003); *Klingele v. Eikenberry,* 849 F.2d 409, 411–12 (9th Cir.1988). The Court may consider a limited set of documents without converting a Rule 12(b)(6) motion into a motion for summary judgment: documents attached to the complaint, documents incorporated by referenced in the complaint, or matters that can be judicially noticed. *Ritchie,* 342 F.3d at 907; *MGIC Indemnity Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir.1986).

▬▬▬ Although the parties' requests for judicial notice may seem a straightforward matter, some discussion is required because they appear to misunderstand the nature and purpose of "judicial notice" under Federal Rule of Evidence 201. The Rule was intended to obviate the need for formal fact-finding as to certain facts that are undisputed and easily verified. Fed. R.Evid. 201; *Melong v. Micronesian Claims Comm.,* 643 F.2d 10, 12 n. 5 (D.C.Cir.1980) (judicial notice under Rule 201 is designed for judicial recognition of scientific or historical fact without resort to cumbersome methods of proof). The Rule permits a court to take judicial notice of two kinds of facts: (1) those that are generally known within the court's territorial jurisdiction; and (2) those that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, for example, almanac, dictionary, calendar or similar source. In other words, "the fact must be one that only an unreasonable person would insist on disputing." *United States v. Jones,* 29 F.3d 1549, 1553 (11th Cir.1994). Documents that are part of the public record may be judicially noticed to show, for example, that a judicial proceeding occurred or that a document was filed in another court case, but a court may not take judicial notice of findings of facts from another case. *See Wyatt v. Terhune,* 315 F.3d 1108, 1114 & n. 5 (9th Cir.2003); *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir.2001); *Jones,* 29 F.3d at 1553. Nor may the court take judicial notice of any matter that is in dispute. *Lee,* 250 F.3d at 689–90; *Lozano v. Ashcroft,* 258 F.3d 1160, 1165 (10th Cir.2001).

▬▬▬ Defendants ask the Court to take judicial notice of Exhibits A–G attached to the declaration of G. Michael German in support of their motion to dismiss. [Defendants' Request for Judicial Notice.] The exhibits consist of the state court abstracts of judgment from Plaintiffs' criminal cases; various prison medical records; and documents pertaining to Plaintiffs' exhaustion of their administrative remedies. The documents pertaining to exhaustion are part of a state administrative proceeding and can be judicially noticed as public records. *Ritchie,* 342 F.3d at 909. They are also relevant to the Court's determination of the motion to dismiss. *See Wyatt,* 315 F.3d at 1119. As to the remaining documents, Defendants have not demonstrated that Plaintiffs' prison medical records are matters of "public record" subject to judicial notice, not would it be appropriate for the Court to take notice of disputed matters contained within the medical records, as Defendants appear to request. *See United States v. Burch,* 169 F.3d 666, 672 (10th Cir.1999) (not proper for court to take judicial notice of disputed facts contained in hearsay document). The state court abstracts are

public records that may be judicially noticed, but Defendants have not explained, not can the Court discern, what relevance these documents have to the issues raised by the motion to dismiss. It is already apparent from the complaint that Plaintiffs are criminal offenders housed in a maximum security prison, and without a more thorough explanation of why judicial notice of the abstracts is necessary, the Court does not find it appropriate to take notice of these documents. *Plevy v. Haggerty,* 38 F.Supp.2d 816, 820–21 (C.D.Cal.1998) (declining to take judicial notice of public records that were not relevant to motion to dismiss). For these reasons, the Court **RECOMMENDS** that Defendants' request to take judicial notice be **GRANTED** as to Exhibits C and D to the Declaration of G. Michael German and **DENIED** as to all other exhibits.[2] For clarity of the record, the Court **RECOMMENDS** that all other exhibits attached to the Declaration of G. Michael German be **STRICKEN**.

 Plaintiffs, for their part, request judicial notice of numerous documents submitted in support of their opposition to the motion to dismiss. These documents consist of documents related to Plaintiff Hurd's exhaustion of administrative remedies; various communications between the Plaintiffs and prison employees regarding the night-time lighting; documents related to the alleged seizure of Plaintiff Hurd's legal materials; certain health care records; and an article entitled, "How to Sleep Better When in Jail or Prison."[3] [*See* Hurd Decl., Exhibits A–H; Walker

Decl, Exhibits A–D.] The documents pertaining to Plaintiff Hurd's exhaustion efforts are part of a state administrative proceeding and may be judicially noticed, not for the truth of their contents but for the fact that the grievance proceeding occurred. *See Ritchie,* 342 F.3d at 909. These documents are also relevant to the Court's determination of the exhaustion issue. *See Wyatt,* 315 F.3d at 1119. As to the remaining documents, including the letters, articles, and medical records, the Court is aware of no basis for these documents to be judicially noticed or even considered by the Court in the context of the motion to dismiss. Plaintiffs suggest that at least some of these documents can be considered because they are referenced in the complaint. [Pl. Opp. at 2–3.] However, the "documents incorporated by reference" exception was meant to allow the court to consider documents of undisputed authenticity that form the basis of the plaintiff's complaint, such as an insurance policy in an insurance coverage dispute. *See Ritchie,* 342 F.3d at 908–09. The exception was not intended to allow consideration of any extraneous document mentioned or alluded to by Plaintiffs in their complaint. Such a broad exception would all but negate the rule that outside evidence may not be considered on a motion to dismiss.

For these reasons, the Court **RECOMMENDS** that Plaintiffs' request to take judicial notice be **GRANTED** as to Exhibit B to the Declaration of Plaintiff Hurd in Support of Opposition to Motion to Dis-

---

**2.** In addition to the exhibits mentioned above, Exhibit E consists of an unpublished district court order which, as Defendants point out in a supplemental filing, has since been published. [Supplemental Memorandum of Points & Authorities by Defendants.] Thus, this document is no longer necessary.

**3.** The Court finds it puzzling that Plaintiffs complain about Defendants' submission of

documents outside the complaint when they themselves submit dozens of extraneous documents. It is particularly odd that Plaintiffs argue against the Court's taking judicial notice of their medical records submitted by Defendants but request that the Court take judicial notice of the medical records they have submitted.

miss and **DENIED** as to all other exhibits. For clarity of the record, the Court **RECOMMENDS** that all exhibits other than Exhibit B to Plaintiff Hurd's Declaration in Support of Opposition to Motion to Dismiss and all exhibits attached to Plaintiff Walker's Declaration in Support of Opposition to Motion to Dismiss be **STRICKEN**.

 Plaintiffs also ask the Court to take judicial notice of various documents submitted in support of their motion for a preliminary injunction. [Plaintiffs' Request for Judicial Notice of Adjudicative Facts.] These documents consist of declarations from other inmates, various correspondence, newspaper articles, and information from an internet website describing the need for adequate sleep. [Declaration of K. Jamel Walker In Support of Reply to Opposition to Motion for Preliminary Injunction; Exhibits.] None of these materials fall into the limited category of documents that can be judicially noticed under Rule 201. Thus, the Court **RECOMMENDS** that Plaintiffs' request for judicial notice be **DENIED**. Nonetheless, in deciding a motion for preliminary injunction—unlike a motion to dismiss—the Court is not limited solely to the pleadings and may consider affidavits or declarations along with other evidence submitted by the parties. *See* Fed.R.Civ.P. 65; *University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981) (preliminary injunction may be granted on "basis of procedures that are less formal and evidence that is less complete than in a trial on the merits"); *see also Flynt Distrib. Co. Inc. v. Harvey,* 734 F.2d 1389, 1394 (9th Cir.1984) ("The trial court may give even inadmissible evidence some weight when to do so serves the purpose of preventing irreparable harm before trial."). Although Plaintiffs' documents do not meet the requirements for judicial notice, the Court nonetheless considered them in the context of the preliminary injunction motion and gave them appropriate weight in preparing this Report & Recommendation.

### *Defendants' Motion to Dismiss*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the plaintiff's claims. *See* Fed.R.Civ.P. 12(b)(6). A claim can be dismissed only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the complaint." *Swierkiewicz v. Sorema,* 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). The issue is not whether the plaintiff will ultimately prevail, but solely whether he has stated a claim upon which relief could be granted. *Jackson v. Carey,* 353 F.3d 750, 755 (9th Cir.2003). When the plaintiff is appearing *pro se,* the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Thompson,* 295 F.3d at 895; *Karim–Panahi v. Los Angeles Police Dept.,* 839 F.2d 621, 623 (9th Cir.1988). This rule of liberal construction is particularly important in civil rights cases. *Ferdik v. Bonzelet,* 963 F.2d 1258, 1261 (9th Cir. 1992). In giving liberal interpretation to a *pro se* civil rights complaint, however, the court is not permitted to "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir.1982).

### *1. Exhaustion by Plaintiff Hard*

 As an initial matter, the Court must address Defendants' argument that Plaintiff Hurd failed to exhaust his administrative remedies, because exhaustion is a prerequisite to bringing suit under the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a); *Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Lira v. Herrera,* 427 F.3d 1164, 1169 (9th Cir.2005). The PLRA

provides in pertinent part, "No action shall be brought ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Here, Defendants have properly raised the issue of exhaustion by filing a "non-enumerated" motion under Fed.R.Civ.P. 12(b). *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.2003). Failure to exhaust is an affirmative defense, and Defendants therefore bear the burden of proving that Plaintiff Hurd did not properly exhaust his claims through the prison's administrative appeal process. *Id.* at 1117–19. In deciding a motion to dismiss based on failure to exhaust, the Court may look beyond the pleadings to extrinsic evidence related to the exhaustion issue. *Id.* at 1119.

The administrative appeals process for California inmates is set forth in Title 15 of the California Code of Regulations, which provides, "Any inmate ... may appeal any departmental decision, action, condition, or policy perceived by those individuals as adversely affecting their welfare." Cal. Code Regs. tit. 15 § 3084.1(a). The process consists of four steps. The first step is for the inmate to attempt to informally resolve his or her problem with the staff member involved. *Id.* at § 3084.5(a). If unsuccessful, the inmate can submit a grievance on the CDC inmate appeal form, called a "602" form. *Id.* at § 3084.5(b). If denied at that level, the inmate can appeal to the second level of formal review conducted by the institution head or his/her designee. *Id.* at § 3084.5(c). The third and final level of formal review, called the "Director's Level," is conducted by the Director of CDC or his/her designee. Cal. Dept. of Corr. Operations Manual § 54100.11; *Nichols v. Logan*, 355 F.Supp.2d 1155, 1161 (S.D.Cal.2004).

Defendants argue that Plaintiff Hurd failed to satisfy any of these four steps. In support they submit documentation from the custodian of prison records showing that although Plaintiff Hurd has filed approximately 45 grievances during his incarceration, the most recent was filed in May 2004, six months prior to Defendant Ryan's adoption of the new policy that gave rise to this lawsuit. [*See* Declaration of G. Michael German ("German Decl."), Exhibit D (Declaration of Custodian of Records and attachment).] Such documents may be considered by the Court in deciding whether the claims in the complaint have been properly exhausted. *See Wyatt*, 315 F.3d at 1119. Plaintiff Hurd has submitted documentation showing that he filed a 602 form in 1998 related to the night-time lighting. [Hurd Decl., Exhibit B.] As Defendants point out, if Plaintiff Hurd brought this suit to challenge some action taken by Defendants in 1998, his claim would be time-barred. *See Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir.1999) (California's one year statute of limitations applied to prisoner civil rights actions brought under 42 U.S.C. § 1983). Nonetheless, it is apparent from the complaint that Plaintiffs are challenging Defendant Ryan's policy prohibiting inmates from covering their lights during the night at risk of disciplinary action. [*See* Complaint at 6–7.] This policy was adopted in December 2004. [*Id.*] Plaintiff Walker submitted a grievance following adoption of this policy and has properly exhausted his claims; it is apparent that Plaintiff Hurd did not file a grievance related to this policy.

Plaintiff Hurd does not dispute that he failed to submit a grievance regarding the December 2004 policy, but argues he was not required to do so once Plaintiff Walker's grievance was denied. [Pl. Opp. at 8–11.] To the contrary, the Supreme Court has expressly held that there is no "futility" exception to the exhaustion requirement, so as to excuse Plaintiff Hurd's failure to file a grievance based on his subjective belief that there would be

no point in doing so. *See Booth v. Churner*, 532 U.S. 731, 741 & n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Plaintiff Hurd may also be arguing that he exhausted his grievances by filing a request for medical treatment in January 2005 related to physical symptoms allegedly caused by the lighting. [Pl. Opp. at 3.] This argument fails because there can be no "constructive" exhaustion under the PLRA; the inmate must exhaust the prison's administrative grievance process, and cannot simply raise his complaint with prison officials through some other means. *See Panaro v. City of North Las Vegas*, 432 F.3d 949, 954 (9th Cir.2005) ("The PLRA ... represents a Congressional judgment that the federal courts may not consider a prisoner's civil rights claim when a remedy was not sought first in an available grievance procedure.").

For these reasons, the Court finds that Plaintiff Hurd has not properly exhausted his claims pursuant to § 1997e(a). When a prisoner complaint contains both exhausted and unexhausted claims, the appropriate course is to dismiss the unexhausted claims without prejudice and allow the remainder of the case to proceed.[4] *See Lira*, 427 F.3d at 1175–76. The Court therefore **RECOMMENDS** that Plaintiff Hurd's claims be **DISMISSED** without prejudice for failure to exhaust.

### 2. *Eighth Amendment claim*

Defendants next argue that the complaint fails to raise a cognizable claim under the Eighth Amendment because exposure to low-wattage lighting during the night does not constitute cruel and unusual punishment. [Def. Points & Auth. at 6.] As the Supreme Court has recognized, "the Constitution does not mandate comfortable prisons," and the Eighth Amendment therefore prohibits only extreme deprivations, namely, conditions of confinement that involve the "wanton and unnecessary infliction of pain" or that "deprive inmates of the minimal civilized measures of life's necessities." *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *Rhodes v. Chapman*, 452 U.S. 337, 346–47, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). To establish a claim for unconstitutional conditions of confinement, the prisoner must show that prison officials engaged in acts or omissions constituting deliberate indifference to his health or safety. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Under the deliberate indifference standard, liability may be imposed only if the prison official "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A prison official cannot be held liable for failure to alleviate a risk of harm to the inmate's health or safety that he should have perceived but did not. *Id.* at 838, 114 S.Ct. 1970.

Here, Plaintiffs allege that they are being subjected to 24–hour lighting in their cells, causing them to suffer "symptoms of sleep deprivation, including but not limited

---

**4.** There is an exception to this rule when the exhausted and unexhausted claims are so intertwined that they are "difficult to entangle," in which case the court should dismiss the entire complaint with leave to amend to allege only the fully exhausted claims. *Lira*, 427 F.3d at 1176. Here the exhausted and unexhausted claims are not difficult to entan-

gle because they are raised by separate plaintiffs. If, however, the District Court determines that the claims are difficult to entangle, the appropriate course would be to dismiss the complaint and grant Plaintiff Walker leave to file an amended complaint alleging only his claims.

to headaches, eye-strain, fatigue, irritability, difficulty focusing, concentrating, falling asleep and/or remaining asleep." [Complaint at 2.] They allege that Defendants are aware that the conditions are harming their health. [Complaint at 2, 6–7.] The Ninth Circuit has held that constant illumination can violate an inmate's Eighth Amendment rights. *Keenan v. Hall*, 83 F.3d 1083, 1090–91 (9th Cir.1996); *see also Zatko v. Rowland*, 835 F.Supp. 1174, 1181 (N.D.Cal.1993) (constant illumination of cell with bright light violates inmate's basic right to shelter). As with all Eighth Amendment claims, the issue is one of gradations; the Eighth Amendment is applied in a flexible manner and there is no "static" test for what constitutes cruel and unusual punishment. *Rhodes*, 452 U.S. at 346, 101 S.Ct. 2392. In this case, if the lighting is bright enough to cause Plaintiffs to suffer "grave" sleep problems, it may constitute cruel and unusual punishment. *See Keenan*, 83 F.3d at 1090. On the other hand, if the lighting is merely an annoyance or minor disturbance it would not violate the Eighth Amendment, since routine discomfort is part of the penalty criminal offenders pay for their offenses against society. *Hudson*, 503 U.S. at 8, 112 S.Ct. 995.

Defendants argue that the factual allegations in the complaint fail as a matter of law to state an Eighth Amendment claim. They cite numerous cases in which similar 24–hour low-wattage lighting claims have met with failure. [*See* Def. Points & Auth. at 6–7.] These cases are all from outside this Circuit, however, whereas the Ninth Circuit has expressly held that constant cell lighting can violate the Eighth Amendment. *See Keenan*, 83 F.3d at 1090–91.

Additionally, upon review, it is apparent that the cases cited were decided in the context of a summary judgment motion or following a trial. [*See* Def. Points & Auth. at 6–7 (citing *Bauer v. Sielaff*, 372 F.Supp. 1104 (E.D.Pa.1974) (following bench trial, court held lights did not constitute constitutional deprivation); *Williams v. Ward*, 567 F.Supp. 10 (E.D.N.Y.1982) (on summary judgment, court concluded constant lighting was not cruel and unusual punishment); *O'Donnell v. Thomas*, 826 F.2d 788 (8th Cir.1987) (upholding district court's ruling following bench trial that constant lighting was supported by legitimate penological concerns); *Ferguson v. Cape Girardeau County*, 88 F.3d 647 (8th Cir.1996) (upholding district court's ruling on summary judgment that constant lighting was reasonably based on security concerns); *Fillmore v. Ordonez*, 829 F.Supp. 1544 (D.Kan.1993) (on summary judgment, court held soft night-time lighting did not amount to cruel and unusual punishment)).] In contrast to these cases, this case is only at the pleading stage. Plaintiffs have alleged in their complaint that the night-time lighting inhibits their ability to sleep for more than a few hours at a time, causing them to suffer serious effects of long-term sleep deprivation. [Complaint at 2, 6–8.] At the pleading stage, a claim may not be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the complaint." *Swierkiewicz*, 534 U.S. at 513, 122 S.Ct. 992. Giving the complaint liberal construction, the Court cannot conclude that there is no set of facts that could be proven entitling Plaintiffs to relief.[5] For these reasons, the Court **RECOMMENDS** that Defendants'

---

5. For instance, although Defendants characterize the lighting as nothing more than a "night light," Plaintiffs allege that the fluorescent lighting is equivalent to a 40–60 watt incandescent bulb. [Complaint at 5.] Factual disputes like these cannot be resolved at the pleading stage, as the Court must accept all of Plaintiffs' allegations as true. *See Thompson*, 295 F.3d at 895.

motion to dismiss the Eighth Amendment claim be **DENIED**.

### 3. Fourteenth Amendment claim

Defendants next argue that Plaintiffs have failed to state a cognizable claim under the Fourteenth Amendment Equal Protection Clause. [Def. Points & Auth. at 9 n. 3.] As the basis of their equal protection claim, Plaintiffs allege that they are not permitted to cover or turn out the night-time lighting in their cells, while inmates in Calipatria's administrative segregation unit and inmates within other CDC institutions are not subject to this same lighting. [Complaint at 8.] The Equal Protection Clause commands that "no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). To state an equal protection claim, Plaintiffs must show that the Defendants acted with an intent or purpose to discriminate against them based on their membership in a protected class. *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1134 (9th Cir.2003); *Lee*, 250 F.3d at 668. Prisoners are not a suspect class for equal protection purposes, nor are they entitled to identical treatment as other inmates simply because they are all inmates. *See Norvell v. Illinois*, 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed.2d 456 (1963); *Mayner v. Callahan*, 873 F.2d 1300, 1302 (9th Cir.1989).

Plaintiffs allege, at most, that prisons within CDC have different structural lighting systems and that a newly constructed portion of Calipatria also has a lighting system which allows inmates to turn off the low-wattage bulbs at night. [Complaint at 5–8.] There is nothing in the complaint from which it could be inferred that prison officials intentionally discriminated against Plaintiffs based on their membership in a protected class or some other improper classification. Nor does the Court find persuasive Plaintiffs' argument that they have properly stated a "class of one" equal protection claim, *see Village of Willowbrook v. Olech*, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), since there is nothing in the complaint to suggest Defendants have singled Plaintiffs out to intentionally deprive them of their rights; indeed, the complaint makes clear that Defendant Ryan's policy applies to all prisoners in Calipatria's general population. "The mere fact that defendants' facially neutral policies had a foreseeably disproportionate impact on an identifiable group" does not establish an equal protection violation. *Lee*, 250 F.3d at 687. Discriminatory intent for equal protection purposes does not mean simply intent as volition or intent as awareness of consequences; it implies that the decisionmaker chose a course of action *because of* its adverse effects on an identifiable group. *Id.* (citations and internal quotations omitted). The allegations in the complaint fall short of stating a claim for intentional discrimination under the Equal Protection Clause.

Accordingly, the Court **RECOMMENDS** that Plaintiffs' Fourteenth Amendment claim be **DISMISSED**. Plaintiffs have not previously been granted leave to amend, and it is possible they could plead additional facts to properly state an equal protection claim. *See McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir.2004) ("Leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts, and should be granted more liberally to *pro se* plaintiffs."). Accordingly, the Court **RECOMMENDS**

that the Fourteenth Amendment claim be dismissed with leave to amend.

#### 4. Claims against Defendant Woodford

Defendants next argue that the claims against Defendant Woodford should be dismissed because Plaintiffs have failed to allege any connection between her and the violation of their rights. [Def. Points & Auth. at 8.] Defendants are correct that supervisors cannot be held liable under § 1983 based on the actions of their subordinates based on a vicarious liability theory. *Monell v. Dep't of Soc. Serv. of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir.2002). Thus, to adequately state a claim against Defendant Woodford in her role as a supervisory official, Plaintiffs must allege facts showing she personally participated in the deprivation of their rights. *Jones,* 297 F.3d at 934; *Hansen v. Black,* 885 F.2d 642, 646 (9th Cir.1989).

Here, Plaintiffs allege that Defendant Woodford, "as Director of the CDC, is legally responsible for the overall operation of the CDC, including but not limited to, the promulgation and implementation of regulations and policies, as well as the supervision, management, and control of the State prisons, and the care, custody, treatment, training and discipline of all persons confined therein." [Complaint at 11.] There are no allegations in the complaint to indicate that Defendant Woodford promulgated, implemented, ratified or was otherwise personally involved in the policy prohibiting inmates at Calipatria from covering their lights during the night. To the contrary, Plaintiffs allege that the policy was adopted by the warden, Defendant Ryan. They further allege that there were different policies regarding night-time lighting at other prisons, which suggests there was no CDC-wide policy with which Defendant Woodford, as Director of the CDC, would have been involved. [*See* Complaint at 5–6.]

Plaintiffs argue that Defendant Woodford nonetheless should have been aware of the night-time lighting policy as soon as grievances about the lighting began "reaching the Director's Office." [Pl. Opp. at 20.] However, the records submitted show that grievances regarding the lighting were not decided by Defendant Woodford herself but by her designee, as permitted by state regulations. [*See* Hurd Decl., Exhibit B (Director's Level Appeal Decision signed by Linda L. Melching, Inmate Appeals Branch); German Decl., Exhibit C (Director's Level Appeal Decision signed by N. Grannis, Inmate Appeals Branch).] Without some facts to suggest Defendant Woodford was personally involved in the night-time lighting policy, Plaintiffs have not adequately stated a claim against her under § 1983. Accordingly, the Court **RECOMMENDS** that the claims against Defendant Woodford be **DISMISSED**. Because the Plaintiffs could possibly allege additional facts showing personal involvement by Defendant Woodford, the Court **RECOMMENDS** that the claims against Defendant Woodford be dismissed with leave to amend.

#### 5. Claim for Punitive Damages

Defendants next move to strike Plaintiffs' claim for punitive damages as improper, arguing that an award of punitive damages can only be supported by allegations that a defendant's conduct is motivated by "evil motive or intent," and at most Plaintiffs have alleged deliberate indifference by Defendants. [Def. Points & Auth. at 9.] While evidence of evil motive may warrant an award of punitive damages against a public official under § 1983, a defendant's "reckless or callous disregard of or indifference to the rights of others" is also sufficient to sustain an award of punitive damages. *Smith v.*

*Wade,* 461 U.S. 30, 30–31, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Thus, if Plaintiffs are able to prove that Defendants were deliberately indifferent to their Eighth Amendment rights through reckless disregard of their health or safety, they may be entitled to an award of punitive damages.[6] *Smith,* 461 U.S. at 56, 103 S.Ct. 1625. As such, Defendants have not shown that punitive damages are unavailable to Plaintiffs as a matter of law. The Court therefore **RECOMMENDS** that this aspect of Defendant's motion be **DENIED.**

### 6. Claim for Attorneys Fees

 Defendants also move to strike Plaintiffs' request for attorneys fees. In the *pro se* complaint Plaintiffs seek, among other relief, "reasonable attorneys' fees...." [Complaint at 10.] The case law is clear, however, that *pro se* litigants are not entitled to an award of attorneys fees. *See Kay v. Ehrler,* 499 U.S. 432, 436–37, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991); *see also Corrigan v. United States,* 27 F.3d 436, 438–39 (9th Cir.1994) (purpose of statute permitting award of fees is to enable litigant to obtain assistance of counsel); *Manos v. U.S. Dept. of the Air Force,* 829 F.Supp. 1191, 1193–94 (N.D.Cal.1993) (*pro se* litigant not entitled to attorneys fees because such fees were not actually incurred). While the matter of attorneys fees could be revisited if Plaintiffs retain counsel at some later stage, there is no basis in this *pro se* complaint for an award of attorneys fees. Accordingly, the Court **RECOMMENDS** that the request for attorneys fees be **STRICKEN.**

### Plaintiffs' Motion for Preliminary Injunction

 Also pending before the Court is Plaintiffs' motion for a preliminary in-junction to enjoin the prison's use of night-time lighting while this suit is pending. A preliminary injunction is an "extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (emphasis in original). Additionally, in weighing Plaintiffs' claims, the Court must accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *see also Goff v. Harper,* 60 F.3d 518, 519 (8th Cir.1995) ("[I]n the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is called for in dealing with the complex and intractable problems of prison administration").

 To obtain preliminary injunctive relief, the movant must demonstrate either (1) a combination of probable success and the possibility of irreparable harm; or (2) that serious questions are raised and the balance of hardship tips sharply in his favor. *See Beardslee v. Woodford,* 395 F.3d 1064, 1067 (9th Cir.), *cert. denied,* 543 U.S. 1096, 125 S.Ct. 982, 160 L.Ed.2d 910 (2005); *Arcamuzi v. Continental Air Lines, Inc.,* 819 F.2d 935, 937 (9th Cir. 1987). Under either approach the movant must demonstrate, at a minimum, a significant threat of irreparable injury and at least a fair chance of success on the merits. *Arcamuzi,* 819 F.2d at 937.

Regarding the likelihood of success on the merits, as discussed above, Plaintiff Hurd has not adequately exhausted his

---

**6.** Even assuming Plaintiffs prevail, however, the trier of fact still must determine whether Defendants' conduct "is of the sort that calls for deterrence and punishment over and above that provided by compensatory damages." *Smith,* 461 U.S. at 54, 103 S.Ct. 1625.

administrative remedies and the Court is therefore recommending that his claims be dismissed. The Court is also recommending that all of Plaintiff's Walker's claims be dismissed except for his Eighth Amendment conditions of confinement claim against Defendant Ryan. Although the Court found no basis to dismiss this claim at the pleading stage, it is notable that similar claims regarding low-wattage lighting have ultimately met with failure. *See, e.g., O'Donnell*, 826 F.2d at 790 (continuous lighting was not unreasonable given the need for jail security); *King v. Frank*, 371 F.Supp.2d 977, 984–85 (W.D.Wis.2005) (prisoner's Eighth Amendment rights not violated by prison's use of nine-watt fluorescent light to allow guards to observe inmates at night); *Fillmore*, 829 F.Supp. at 1546 (soft night-time lighting did not amount to cruel and unusual punishment); *see also Wills v. Terhune*, 404 F.Supp.2d 1226, 1231 (E.D.Cal.2005) (inmate failed to demonstrate fair chance of success on merits of claim that prison's use of low-wattage night-time lighting violated the Eighth Amendment).

■ Moreover, although the Ninth Circuit has held that constant illumination can under certain circumstances violate an inmate's Eighth Amendment rights, the *Keenan* case does not stand for the proposition that any and all night-time lighting is prohibited. As the Supreme Court has recognized, a prison regulation that infringes on a prisoner's constitutional rights is nonetheless valid if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Thus, low-wattage night-time lighting may be permissible based on legitimate prison securi-

ty concerns. *See King*, 371 F.Supp.2d at 984–85. Here, Defendant Ryan has submitted a declaration stating that in his judgment the night-time lighting is needed at Calipatria to permit guards to perform cell counts, to ensure that inmates do not engage in unauthorized conduct during the night, and to protect guards from inmates' assaultive behavior.[7] [Declaration of Stuart Ryan ¶¶ 3–4.] Defendant Ryan's judgment regarding the proper administration of the prison is entitled to substantial deference. *See Bell*, 441 U.S. at 547, 99 S.Ct. 1861. Thus, the Court finds Plaintiffs have failed to establish a likelihood of success on the merits of their claims.

Preliminary injunctive relief may nonetheless be appropriate if Plaintiffs can demonstrate they will suffer great injury if an injunction is not issued. *See Beardslee*, 395 F.3d at 1067. The Court finds that Plaintiffs have not met this high standard. At most Plaintiffs assert that they will continue to lose sleep during the pendency of this case and that "monetary compensation cannot give back the hours of sleep" they will lose. [Plaintiffs' Reply Memorandum to Defendants' Opposition to Motion for Preliminary Injunction at 3.] The question is not whether Plaintiffs will suffer inconvenience during the pendency of the lawsuit, but whether they will suffer *irreparable* injury, such as serious, permanent physical or mental damage, if they are not immediately granted the relief they seek. Although the lighting has purportedly caused Plaintiffs to suffer headaches, irritability and other difficulties, they have not demonstrated that they will be irreparably injured if the lighting is not immediately turned off. Additionally, the

**7.** Although the Court may consider this declaration in the context of the preliminary injunction motion, the declaration may not be considered in the context of the motion to dismiss without converting the motion into a

motion for summary judgment. *See Ritchie*, 342 F.3d at 909; *Ware v. Associated Milk Producers, Inc.*, 614 F.2d 413, 414 (5th Cir. 1980).

Court finds that the public interest weighs in favor of denying the request for injunctive relief, as Defendant Ryan has submitted a declaration asserting that the lighting is necessary to maintain order in the prison and protect the safety of prison guards. [Declaration of Stuart Ryan ¶¶ 3–4.] For these reasons, the Court finds Plaintiffs are not entitled to the "extraordinary and drastic remedy" of a preliminary injunction. Accordingly, the Court **REC-OMMENDS** that Plaintiffs' motion for preliminary injunction be **DENIED**.

### *Conclusion*

For all of the above reasons, the Court recommends the following:

1. Defendants' Request for Judicial Notice be **GRANTED** in part and **DE-NIED** in part;

2. Plaintiffs' Requests for Judicial Notice be **GRANTED** in part and **DE-NIED** in part;

3. Defendants' Motion to Dismiss be **GRANTED** to the extent that all of Plaintiff Hurd's claims be **DISMISSED** without prejudice for failure to exhaust; Plaintiff Walker's Fourteenth Amendment claim be **DISMISSED** with leave to amend; the claims against Defendant Woodford be **DISMISSED** with leave to amend; and the request for attorneys fees be **STRICKEN**; and

4. Defendants' Motion to Dismiss be **DENIED** in all other respects; and

5. Plaintiffs' Motion for Preliminary Injunction be **DENIED**.

This report and recommendation of the undersigned Magistrate Judge is submitted pursuant to 28 U.S.C. § 636(b)(1) to the United States District Judge assigned to this case

**IT IS ORDERED** that no later than March 30, 2006 any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than April 13, 2006. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir.1991).

**IT IS SO ORDERED.**

Feb. 28, 2006.